JAMES A. HEWLETT & another *vs.* ELISHA P. CUTLER & another, & trustees.

Suffolk.   March 5. — June 24, 1884.   DEVENS & COLBURN, JJ., absent.

An assignment of property to trustees, to be managed and disposed of for the benefit of the creditors of the assignors, was made in consideration of the covenants and agreements therein expressed to be performed by "their creditors" and the trustees, and of one dollar and other good and valuable considerations paid to the assignors by "said creditors" and the trustees. The assignment recited that it was the purpose of the assignors to have the instrument executed by all their creditors whose claims should equal or exceed a certain sum, and to secure their own release from all personal responsibility for their debts, except those which were trifling in amount; provided that, when they should express their satisfaction with the due execution of the instrument in writing and upon the instrument, it should be a perfected conveyance and agreement, and not before; and the assignors covenanted with the trustees and their creditors to execute further conveyances if required. The instrument also recited that the creditors had appointed an advisory committee, who were to advise the trustees; and provided for filling vacancies by a vote of the creditors. The trustees were constituted the attorneys of the assignors and of the creditors; and covenanted with them, "parties hereto," to execute the trust faithfully; and the respective creditors of the assignors, each for himself, ratified the conveyance, and agreed to accept from the trustees their dividend or proportionate part of the estate in full payment, satisfaction, and discharge of their respective debts, "and an acceptance of this conveyance for our benefit, evidenced by our signature hereto, shall constitute such discharge." The instrument further provided

that " the trustees shall pay *pro rata* dividends to all the unsecured creditors of said grantors ; " and that, " in making such payments to creditors, there shall be no preference or priority, except to holders of valid liens and other creditors whose claims would be preferred under the laws of said Commonwealth relating to insolvency." *Held*, that only such creditors as became parties to the assignment were entitled to share in the dividends.

TRUSTEE PROCESS.   William T. Parker and Charles Marsh were summoned as trustees of the principal defendants, and, in answer to interrogatories filed by the plaintiffs, admitted that they had received property of the defendants by virtue of the following instrument of assignment :

" Know all men by these presents, that we, Elisha P. Cutler and Clarence M. Reed, both of Boston in the county of Suffolk and Commonwealth of Massachusetts, copartners under the name of E. P. Cutler & Co., and individually, in consideration of the covenants and agreements herein expressed to be performed by their creditors and the trustees herein named, and of one dollar and other good and valuable considerations to them paid by said creditors and trustees, the receipt of which is acknowledged, do hereby give, grant, sell, and convey unto William T. Parker and Charles Marsh, both of said Boston, the former being the president and the latter the vice-president of the International Trust Company, a corporation established under the laws of said Commonwealth and located in said Boston, and to their heirs and assigns, the following property, real and personal ; to wit. [Here followed a description of certain specific property conveyed.]

" And the grantors covenant and agree with said grantees and said creditors, that, if they have any other property or right of property not sufficiently conveyed to said grantees by this instrument, they will execute such further conveyances to them as the grantees may require.

" To have and to hold all said estates and property and rights of property to them, the said William T. Parker and Charles Marsh, president and vice-president as aforesaid, and to their heirs and assigns, but in trust, nevertheless, for the following uses and purposes, to wit:

" 1st.  To take immediate possession thereof, and hold, protect, manage, and dispose of the same with a view to realizing the largest possible sum therefor in money, for the benefit of said creditors ; and to that end the said trustees shall have power to

make contracts with mortgagees, pledgees, or holders of liens on any of said property, for an extension of their claims, to avoid sacrifice through forced sales, or to take up any of such mortgages, pledges, or other liens in their discretion, and hold them in place of the present holders, to avoid such sacrifice. But the grantees, however, shall be under no obligation to take any pledged property, and pay or become liable for the lien thereon, if in their judgment it is not advisable so to do, nor shall they be obliged to incur any personal liability whatever; but they may charge the trust estate in their discretion for all reasonable costs, contracts, and liabilities in the execution of this trust for the benefit of said creditors.

" 2d. Said trustees shall dispose of all said assets as rapidly as it can be done in the ordinary course of trade, and without sacrifice, and to that end they may avail themselves of the services of brokers; and as said grantors' creditors have appointed an advisory committee, both said trustees and the grantors shall be governed by the advice of such committee so far as practicable; but said trustees, having assumed the final responsibility, shall have the right to exercise a final discretion and decision as to time and manner of sales of property, and as to any other act or thing in the execution of this trust, except so far as they may be expressly restrained or controlled by the terms of this instrument. So far, however, as said trustees act under the advice and direction of said advisory committee, expressed by letter or other writing or by telegraph, they shall not be responsible to any of the other parties hereto for any abuse of their powers under this instrument. Said committee is composed of Hugh W. Adams and J. E. Thompson, both of New York, and J. O. Richardson, of Philadelphia.

" 3d. Said trustees shall pay *pro rata* dividends to all the unsecured creditors of said grantors, to such an amount and as often as it may be safe to do so, and when they have realized all the estate aforesaid into money, they shall immediately declare a final dividend of all the money then remaining in their hands as the proceeds of said property, after deducting all costs of executing this trust; and as a part of such costs they may deduct interest at the rate of six per centum per annum on all money advanced by them in the execution of the trust, necessary and

usual brokers' commissions actually earned by brokers and paid by said trustees, and for their own services and responsibility a commission of one half per centum on sales or disposition of real estate and personal property, and same on receipt from book accounts, notes, and other claims due said grantors.

" 4th. In making such payments to creditors, there shall be no preference or priority, except to holders of valid liens, and other creditors whose claims would be preferred under the laws of said Commonwealth relating to the insolvency or insolvent estates of living persons; but holders of liens whose security shall have been lawfully disposed of shall be treated as unsecured for the balance of their claims.

" 5th. Full and accurate accounts of all the doings of said trustees under this instrument shall be kept by them and said grantors, and the advisory committee of creditors shall have ac cess thereto at all reasonable times.

" 6th. Said William T. Parker and Charles Marsh, president and vice-president as aforesaid, as such trustees, are hereby con- stituted the attorneys of said grantors and of said creditors, with as full powers in the premises as if they were the absolute owners of all said property, and with equal powers as to the defence of any legal proceedings which may be pending or may hereafter be instituted affecting any of said property, or the grantors personally, subject to the trusts and limitations herein expressed.

" Said grantors hereby covenant with the said trustees, that the schedule hereto annexed contains the names of all their cred- itors, secured or unsecured, whose claims equal or exceed fifty dollars in amount, and the amount due them, respectively, with- out interest.

" And the said William T. Parker and Charles Marsh, presi- dent and vice-president of the International Trust Company, hereby accepting this trust on the terms aforesaid, covenant with said grantors and their creditors, parties hereto, that it will execute the same faithfully; and the said respective creditors of the grantors, each for himself, in consideration of the foregoing conveyance, hereby ratify the same, and each, in consideration of the agreement of the others, and of one dollar to each of them paid by said grantors, agrees to take and accept from said trustees

their dividend or proportionate part of the estate and effects hereinbefore assigned and conveyed by said grantors to said trustees, in full payment, satisfaction, and discharge of the whole of their respective debts, demands, actions, and causes of actions, whatever, against said grantors, whether due and payable at the date of these presents or not. And an. acceptance of this conveyance for our benefit, evidenced by our signatures hereto, shall constitute such discharge.

"It is expressly covenanted and agreed by all the parties hereto, that creditors holding securities do not prejudice the same by becoming parties hereto, but simply discharge said Cutler and Reed and said firm of E. P. Cutler & Co. from all personal liability for such secured claims, the secured creditors relying upon their collateral and upon their right to a dividend for unsecured balances. And further, that any attaching creditor who becomes a party hereto does not thereby release or prejudice his lien by attachment until this instrument shall have been executed by the general creditors of the grantors, secured and unsecured, in such manner, and to such an amount in number and value of claims, as shall be satisfactory to the grantors; it being the purpose of the latter to have this instrument executed by all their creditors whose claims equal or exceed fifty dollars in amount, in such form and to such extent as shall save them harmless against proceedings in insolvency under the laws of said Commonwealth, and secure their release from all personal responsibility for their debts, except those which are trifling in amount; and when they express their satisfaction with the due execution of this instrument in writing and hereon, it shall be a perfected conveyance and agreement, and not before.

"It is finally covenanted and agreed by all the parties hereto, that if said advisory committee, as now constituted or as hereafter constituted by a vote of said creditors duly called for the purpose of filling vacancies, shall decide upon any plan or scheme for the sale or disposition of any part of said pledged iron directly to individual creditors who may wish to avail themselves of such plan or scheme, then said trustees shall conform thereto, and shall thereupon sell and turn over to such creditor or creditors as said committee shall name such part of said iron in kind and quantity as said committee shall designate in writing; but the

advances, costs, and expenses then made, incurred, or due by or to said trustees on account of such iron so to be turned over or disposed of to such creditors, shall first be paid to said trustees. Said committee, however, shall not act upon or carry out any such plan or scheme until they have given all the unsecured creditors whose claims amount to fifty dollars or upwards notice of their intended action, at a creditors' meeting or by mail, that the latter may have an opportunity to express their approval or disapproval: not that the action of said committee may be controlled or restrained, but that said committee may have the fullest information as to the advisability of their action.

"In witness whereof, the said several parties have interchangeably set their hands and seals this           day of July, 1881, this instrument being made in triplicate for convenience and to save delay."

It further appeared, from the trustees' answers, that this instrument was executed by the principal defendants and by a number of creditors before August 1, 1881, and that by that day it had been delivered to the trustees by the defendants, with the following indorsement, signed by them, thereon: "Boston, August 1, 1881. The within trust deed having been executed by the creditors to an extent satisfactory to us in number and amount, we hereby approve the same."

It further appeared that, at the time of the attachment in this action, July 21, 1882, creditors named in the schedule annexed to the assignment whose claims amounted to $35,581.88 had not signed or assented to the assignment, and of these, creditors whose claims amounted to $15,034.53 had since assented; that creditors not named in the schedule, whose claims amounted to $15,003.74, had signed before the attachment, and that other creditors not so named, and whose claims amounted to $43,580.88, had not signed; that the face value of the claims of the creditors who had signed before the attachment exceeded the value of the property assigned; and that the trustees had at the time of the attachment, and still had, in their possession, under said assignment, property of the defendants greater in amount than the plaintiffs' claim.

At the hearing before *Holmes*, J., on a motion to charge the trustees on their answers, the judge ruled that they were not

chargeable, and ordered that they be discharged. The plaintiffs alleged exceptions.

*M. Storey*, for the plaintiffs.

*J. O. Teele*, for the trustees.

C. ALLEN, J. The whole question in this case turns upon the construction of the assignment. If, by its true construction, all the property assigned was to be distributed among such creditors only as should become parties to it, then the whole property will be exhausted by dividends to the creditors who became parties before the attachment in this action was made, and there would be nothing left for the attachment to reach. *Mechanics' National Bank* v. *Eagle Sugar Refinery*, 109 Mass. 38. *May* v. *Wannemacher*, 111 Mass. 202. *Pierce* v. *O'Brien*, 129 Mass. 314. But if, on the other hand, the property assigned was to be distributed among all the creditors of the assignors, without regard to whether they had signed the instrument or not, then the fact becomes important that creditors to a considerable amount had not signed it at the date of the attachment, and the dividends which otherwise would have become due to such creditors could be reached by trustee process.

The former appears to us to be the true construction. It was expressed to be the purpose of Cutler and Company to have the instrument executed by all their creditors whose claims should equal or exceed fifty dollars in amount, and to secure their own release from all personal responsibility for their debts, except those which were trifling in amount. It was provided that, when they should express their satisfaction with the due execution of the instrument in writing and upon the instrument, it should be a perfected conveyance and agreement, and not before. The assignment was in consideration of the covenants and agreements therein expressed to be performed by their creditors and the trustees named in it, and of one dollar and other good and valuable considerations to them paid by said creditors and trustees. The assignors covenanted with said grantees and said creditors to execute further conveyances, if required. The trustees were to manage and dispose of the property for the benefit of said creditors. It was recited that said grantors' creditors had appointed an advisory committee, who were to advise the trustees; and there was a provision for filling vacancies by a

vote of said creditors. The trustees were constituted the attorneys of said grantors and of said creditors. The trustees, being the president and vice-president of the International Trust Company, covenanted with said grantors and their creditors, " parties hereto," that it would execute the trust faithfully ; and the said respective creditors of the grantors, each for himself, ratified the conveyance, and agreed to take and accept from the trustees their dividend or proportionate part of the estate in full payment, satisfaction, and discharge of their respective debts; "and an acceptance of this conveyance for our benefit, evidenced by our signatures hereto, shall constitute such discharge."

In view of all these provisions, the further provisions, especially relied on by the plaintiffs, that " the trustees shall pay *pro rata* dividends to all the unsecured creditors of said grantors," and that, " in making such payments to creditors, there shall be no preference or priority, except to holders of valid liens, and other creditors whose claims would be preferred under the laws of said Commonwealth relating to insolvency," &c., must be held to refer to such creditors only as should become parties to the assignment. It was designed to make it an object for all the creditors to become parties, by giving to them the dividends. The scheme, stated in a general way, was, that the debtors should assign all their property to the trustees ; that all the creditors should become parties, and thereby release the debtors ; and that, if it should be found impossible to procure the signatures of all the creditors, the debtors might nevertheless elect to make the assignment valid and complete, for the benefit of such creditors as should sign, leaving the debtors personally responsible to the others.

*Exceptions overruled.*